Thank you, Emma C. We have six cases to hear this morning. We're going to take a break for about ten minutes after the third one. I hate to do this, but we're going to have to be pretty firm on that clock because we have a full day, believe me. So, in any event, Alison, are you ready? Mr. Phelps, you ready? Oh, I'm ready. Okay. Your Honors, may it please the Court. The BIA based its decision dismissing Mr. Avella's appeal on two legal conclusions. Petitioner is seeking review of the BIA's decision because these two errors of legal reasoning are proliferating in the immigration courts, uncorrected by the BIA. These two legal conclusions are, first, the BIA erred in holding without analysis that the immigration judge did not err when he analyzed the particularity of Mr. Avella's particular social group, not by focusing on the precision of the words used to define the group, the BIA's own test, but rather by holding that the group as proposed was too large, too diverse, too divisible. And second, that the record supported the immigration judge's conclusion that the harm Mr. Avella suffered in the past and feared in the future was because his persecutors were criminals and their reasons for harming him were criminal. This Court is limited to review of those two holdings. The government argues that this Court does not have jurisdiction to consider the issues raised by the petitioner due to the petitioner's alleged failure to exhaust the precise arguments before the BIA. After a briefing on this case, the Supreme Court decided Sanchez-Zacarias v. Garland. The Court held that 1252d is not jurisdictional and that exhaustion for purposes of 1252d only requires exhaustion of remedies of right. But it is a claims processing requirement and the government has invoked its opposition based on a lack of preservation. So why does it even matter, other than academically, whether we dismiss for jurisdictional or non-jurisdictional grounds? There are three reasons. So first of all, we're reviewing the Board's decision. And the Board's decision, when there is legal error in the Board's decision, it's irrelevant whether we've raised that prior because we haven't been able to raise that prior. This is the first forum in which those issues can be raised. Second in this case... Well, I'm not really sure I'm following that. Their argument is that in your administrative appeal, for example, on social visibility, conflating the particular social group with the social visibility, they're arguing that you did not present that in your administrative appeal to the BIA. So the BIA then makes a decision, the government says, this is a claims processing requirement. You didn't work the BIA to this particular argument. So if you didn't present that in your administrative appeal to the BIA, why isn't the government right? That's not the exact argument that we're making, Your Honor. One of the problems with the BIA's analysis and the failures of the BIA here is that they actually made no analysis. They simply rubber-stamped what the IJ did. And that's allowing the errors to proliferate. So if you look at the particularity claim specifically, the question of legal cognizability is asking and answering the question of, is the proposed particular social group eugistum generis with the other four grounds of protected characteristics? Is it of the same kind? And as a result, the BIA's test very carefully treats particular social groups with the same requirements that can apply equally to the other protected grounds. So, for example, we're dealing with Venezuelan political opinion. We're dealing with Ukrainian nationals. And the board's test in matter of MEVG says, does the particular social group, is it composed of members who share immutable characteristic? Is it defined with particularity? Is it socially distinct within the society in question? All three of those criteria, cognizability criteria, would apply equally to Ukrainian nationals and Venezuelans politically opposed to their government. On the other hand, the immigration judge's criteria, which says, is this group too large? Is this group too diverse? Is this group divisible? You can ask and dismiss Ukrainian nationals and Venezuelan political opponents of the government on exactly those criteria. And when the IJ failed to apply the proper test for particularity, and the board said, you're fine, what you did was correct, that's a legal error of analysis. But you're arguing that we exercised de novo review, correct? Yes. So why does it matter if the VA applied the incorrect legal test, because we are going to conduct a de novo review if we adopt your position, and we will determine in the first instance, under the correct legal test, whether or not this is a particularized social group. That is actually not the structure of the review. We're seeking remand with instruction to the board. But why? I mean, why should we remand when your argument is that it's a legal determination? You're telling us what the legal test is, and if we say, okay, counsel, you're right, we will determine based on the correct legal test whether or not this is a particularized social group, why do we have to remand for the VA to do something that we can do in the first instance? Because it's, in your view, a pure question of law. Because ultimately, this court is not going to be able to grant asylum in this case. All the court can do is say, these two issues are incorrectly analyzed, okay. Ultimately, I don't know whether Mr. Aviles will be granted asylum, or even whether he should be granted asylum, okay. That's not my concern. My concern here is that these are legal issues that are proliferating throughout the system, and I see them continuously. So you'd prefer that we not rule in your favor, but we send it back? You would have to reverse the Board of Immigration's appeals. We're seeking a reversal of the decisions on those two issues. But my point is, a reversal of the decision on those two issues, because of the lack of analysis at the IJ level and the lack of complete analysis at the Board level, isn't going to be enough for this court to grant asylum. Okay. We're chewing time here. Yes. And you have a lot to cover with seven minutes. What else is important that we know? The other issue, okay, it has to do with the nexus argument. Before we leave the argument on... Particularity? Yes. You referenced MEVG, right? Yes. And decided the same day was a matter of WGR, where it was found insufficient the category gang members who renounced gang membership. Why is that any different than business owners who are opposing or defying the gang? It seems like one's as good as the other. Well, and the Fourth Circuit recently held that the analysis of WGR conflates those two concepts. Okay. And so is that your answer, that we should ignore WGR and go with the Fourth Circuit? That's my answer, Your Honor, because the Board itself, okay, as occurred in this case, is messy on this issue. All right. But under WGR, do you concede that you would lose if we applied that? If you apply the standard, the mixed-up standard that the Board analysis that the Board applied in WGR? Yeah. Okay. Well, your category is all business owners who have defied the gang. And my question to you, and what I'm trying to get some help with, is why would a category of all people who have defied the gang be too broad? Or do you think that would be a fine category as well? I, that could go either direction, Your Honor, okay? Because I think that it is, I think it's defined with particularity. The question of whether there's immutable characteristics may be open. What would they possibly be? The question, and the question of whether, and the third prong of the analysis, which is whether it's socially, whether that is perceived as a group within the Sarps of El Salvador. Is there something about business owners that's more important than any other group of people who defy gangs? In the context of El Salvador, I would argue that yes. All right. How about people who work at businesses, and they're pressured by the gang to make the owner self-derived?  But I'm trying to figure out what the boundaries are on your proposed rule. The boundaries of the particular social group. So it's a fair question. Ownership. And the fair question is, what about a store clerk who's pressured? This is about ownership, and owners are targeted in a particular way in El Salvador. They're, I mean, you can't burn down a store clerk's business. What if you're a member of an LLC, and there are other members of the LLC? Would they fall within your argument? Again, Your Honor, all of these protected grounds can be sliced and diced and cut up into pieces. That's not the criteria. The criteria are just like American baseball players. Can we tell who's in the group? Can we reasonably figure who's in the group and who's not? What if we conclude, and I don't want to, because you're getting a little on time, so this partly relates to your first issue, partly to your second. But what if we conclude that the BIA could reasonably have determined that the petitioner was targeted because he defied the gang, and it had nothing to do with whether or not he was an owner of the business? For example, maybe the BIA said, well, there's no evidence that they stole from him from the business, and they targeted him because he simply defied the gang. But that's not what the BIA said. What the BIA said was these are criminal organizations, and they targeted him for criminal reasons. And in so doing, the BIA ignored three specific factual findings that the IJA made on this case. But I'm not really following. Why do we care what the articulation of the BIA for the explanation is? Because on your second issue with regard to nexus, the issue is whether or not there was substantial evidence for the BIA to determine that there was no nexus between the threat of persecution or the actual persecution and the petitioner's membership in this social group. If I get to that, Your Honor, because I'm running out of time, okay? The IJA explicitly found and the board completely disregarded three explicit factual findings with regard to motive. The evidence of motive indicates that the male respondent's business was threatened because his father, who owned the business originally, did not pay the quotas to the gang members. Also, that he did not want Jonathan to be recruited and stood up for him. And when the respondent himself was asked to participate in criminal activity, he refused. Okay? So if you remand, I mean, the board's failure to grapple with those explicit factual findings and their complete disregard of those factual findings in favor of an analysis of the characteristics and traits of the persecutors, which is the precise error that the Supreme Court overruled. And the Ninth Circuit in matter of Aliyah Zacharias. Okay? So you can remand it, okay, but it's going to need instruction on both of those points. And for that reason, it is our request that the board, the court remand this case to the BIA with instructions regarding the proper legal criteria to be applied in the analysis of both of these issues. Thank you. Okay. Thank you very much. Good morning, Your Honor. May it please the Court, Eric Anderson representing the Attorney General. Just raise that just a little bit. The podium? No, the microphone. Yeah, there you go. Thank you. An applicant for asylum has the burden of demonstrating past persecution or well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. In Mr. Aviles-Ramos' case, that meant he had the burden of showing that his membership in a particular social group was at least one central reason for the harm he experienced and fears. And there's no doubt that he credibly established that he, his family, and acquaintances have suffered at the hands of criminal gangs in El Salvador. But the evidence also shows that these were actions by the gangs pursuing their criminal goals because of his actions in refusing to comply with him and not on behalf of any status he held. The Board of Immigration Appeals did not err in its particularity finding or in its nexus finding, and the petition for review should be denied. To start with the particularity finding, a particular social group the board has held requires the showing of immutability, particularity, and social distinction. And this court, reviewing de novo while applying any appropriate Chevron factors, has agreed with that. But when it is determining whether a group defined as Salvadoran, businessman, or criminal, and business owners who defy criminal organizations qualifies as a particular social group, there is no amount of statutory construction that is going to dictate the answer. Let me ask you a question there, and it's kind of a technical one, but looking at the immigration judge order, he begins correctly by noting that the particular social group is alleged to be all Salvadoran business owners who defy criminal organizations. But then in the analysis, he just talks about business owners. He leaves off the rest of that. And of course the board adopts that finding. Isn't that a problem? Was it properly analyzed by truncating the actual group? Your Honor, I think if Salvadoran business owners are themselves not a group that would be particularly defined in Salvadoran society, I think that's enough to undo the group. I don't think you can make it more particular. I mean you might make it more particular by saying LLC owners or sole proprietors or something like that. But by adding qualifications such as who defied criminal organizations, you haven't increased the definiteness, the delineation provided by the term business owners, if that responds to your concern. I follow you. Well, why would that be? There's a million business owners and those who defy the gangs, maybe it cuts it by half or cuts it by two-thirds. I don't know. Why wouldn't that make the group more particular? Why would it? You're arguing that business owners, it just can't be made a smaller group by resistance to the gangs. And I guess I don't understand that. Well, the term itself will wind up encompassing LLC owners who resist gangs, sole proprietors who resist gangs, perhaps small owners who have a large number of employees who resist gangs. Why does that matter? Include them all. They're all businesses. They're different kinds of businesses, but who cares? They're businesses. The reason that they're defying is because the gang is focusing on them because they're businesses. The gang doesn't care what their legal definition is. No, the gang cares because they don't do what the gang wants them to do, Your Honor. That's the evidence in this case. And I could discuss particularities some more or events to nexus if that's a concern the court has. Well, can I just ask you this? You're saying that, well, they're targeting them because they're resisting the gang activity. But it seems fairly logical that why would the gang target people that have no money? Why would they target people that have nothing to give them? And so it's not a crazy notion that they would target people that have assets, that have businesses, something to give them. Or young men who can be recruited who might not have assets but can help them achieve their goals of achieving power over certain parts of the city, other things like that. But why isn't it unreasonable to draw that distinction? Well, then we've redefined the group as somebody in terms of assets instead of business ownership, which is, again, not the group that has been exhausted here. But we would get into areas, and many court decisions have addressed wealthy, whatever, wealthy Guatemalans, Salvadorans, whatever, and those generally fail. Those claims generally fail. Again, on particularity grounds, who qualifies? Who would fit into this group? Counsel, just reading the IJ one sentence. And in this case, the court finds that business owners is simply too broad of a category. If we disagree with you about your separating businesses into different legal charters or whatever, and we say business is not bothering us much, does this need to go back to the agency to then consider the whole piece? That's what I'm asking. No, Your Honor, at least in part because of the nexus finding that comes next. And here, the standard of review is clear that it is, the court is looking for whether the record compels a conclusion contrary to that drawn by the immigration judge and board. And not only does the record not compel the conclusion, but there's simply no support for a finding that he was targeted because he was a business owner. All of his, and here we're dealing largely with his declaration that he testified about at the hearing. But every aspect of it is that he was being targeted by the gangs. Well, there's some extraneous stuff. Maybe his brothers were members of an indigenous group that is not at issue here, or his partner's son was targeted because of a disfavored religious group that is, again, not at issue here. But the rest of the evidence is that it was a matter of extortion, recruitment, all these actions of the gang. Well, it doesn't have to be the sole reason. And he did testify that he was targeted because he declined or refused to sell drugs at the store. That sounds like a nexus might be made. Why not? Well, Your Honor, in light of all the other abundant record evidence about why they were mad at him because he did not do what they wanted him to do, his refusal to participate in his activities, I don't think even that sentence alone compels a contrary conclusion. On nexus, two things. Mr. Aviles-Ramos would ask the court to reread Elias Zacharias. And as often as I can, I encourage judges on the courts of appeals to reread Elias Zacharias because it makes three things clear, that the unaccounted factor is a matter of motive. It's a matter of why did the persecutor do this. And it makes clear that, and that was a case of guerrillas recruiting individuals who did not want to be recruited and that the guerrillas had many reasons why they might want to recruit someone that had nothing to do with the victim's political opinion, social group, whatever. And third, obviously, on the standard of review. So I actually think Elias Zacharias absolutely supports the board's decisions in this case. When we ask whose political opinion matters, whose social group matters, it's the victims. But when we ask whose motive matters, it's the persecutor. And finally, Your Honor, in terms of the Fourth Circuit and the attempt, or the request that this court follow that, the case called Hernandez-Avalos is sort of the origin of the Fourth Circuit's position on this. But I would ask the court to read its two decisions, this court's own two decisions in Orellana-Racinos and Rodas-Orellana, I believe, are the two cited fully in briefs where this court rejected that. If the gang is coming after a victim in pursuit of its criminal goals because of the person's refusal to comply with the requests, any proffered social group is not a central reason for the harm. And I believe that should be enough. Mr. Avalos-Ramos has to prevail on two claims to win in this court. I don't believe the board erred on either, and we'd ask the petition for review to be denied. Unless there are any further questions. All right, thank you very much. Does the petitioner have any further time? I'm going to limit you to four seconds, but don't take too long. Give us one final closing thought. And you might lower that, by the way. The issue of nexus is not a question of fact. It's a mixed question of fact and law, because there are legal criteria that govern the facts and decide which facts are relevant. That's why this is an issue of fact. Thank you very much. Thank you, counsel.